UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

MICHAEL A. FREEMAN,                    )
                                       )
          Petitioner,                  )
                                       )
v.                                     )          No. 2:19-CV-00008-JRG-CRW
                                       )
UNITED STATES OF AMERICA,              )
                                       )
          Respondent.                  )

## MEMORANDUM OPINION

This matter is before the Court on Petitioner Michael A. Freeman's Memrandum [sic] in

Support of Motion to Vacate, Set Aside, or Correct Sentence Filed by a Person Custody Pursuant

to 28 U.S.C. § 2255 [Doc. 1], Mr. Freeman's Amended or Supplemental Motion to Vacate

Sentence under 28 U.S.C. § 2255 [Doc. 7], and the United States' Response [Doc. 25]. For the

reasons herein, the Court will deny Mr. Freeman's motion.

## I. BACKGROUND

In 2014, the United States indicted Mr. Freeman and his co-defendant Crystal Lozano

on charges of producing, distributing, receiving, and possessing child pornography, in violation of

18 U.S.C. §§ 2251(a) and 2 (Count One), 18 U.S.C. § 2252A(a)(2) (Count Three), and 18 U.S.C.

§ 2252A(a)(5)(B) (Count Four). [Superseding Indictment, Doc. 14, at 2–3, No. 2:14-CR-00073-2-

JRG].[1] After unsuccessfully moving, through his attorney, to quash or dismiss the indictment,[2]

Mr. Freeman entered into a plea agreement with the United States, though the Court ordered two

competency examinations before holding a change-of-plea hearing. [Orders for Mental Exam,

---

[1] In Count Two, the United States charged Crystal Lozano with a violation of 18 U.S.C. § 2252A(a)(1) and
(a)(2).

[2] Mr. Freeman's attorney argued that "[t]he prosecution has no credible evidence against [him]." [Mot. to
Quash, Doc. 30, at 4, No. 2:14-CR-00073-2-JRG].

Docs. 42 & 78, No. 2:14-CR-00073-2-JRG]. He pleaded guilty to knowingly possessing child

pornography, in violation of § 2252A(a)(5)(B). [Plea Agreement, Doc. 67, at 1, No. 2:14-CR-

00073-2-JRG; Minute Entry, Doc. 105, No. 2:14-CR-00073-2-JRG]. The plea agreement's factual

basis states:

> On November 1, 2013, a forensic interview was conducted with a minor child at the Children's Advocacy Center in Mosheim, Tennessee. During the interview, the child indicated that photographs had been taken of her private parts [pointing to the vagina on an anatomical drawing].
>
> On April 1, 2014, the Greeneville Police Department, went to the residence of co-defendant Crystal Lozano, 406 Elk Street, Apartment Q92, Greeneville, Tennessee, to speak with Lozano about a statement Lozano made to Tennessee Department of Children's Services regarding Lozano taking child pornographic photographs of the aforementioned child, and sending them to her boyfriend, the defendant. Lozano signed a waiver of her rights and wrote a confession statement.
>
> Lozano admitted in her confession statement that she took child pornographic pictures at the request of the defendant. Lozano stated that, "I took 3 pics of her with her vagina opened and one with just her panties pulled to the side," referring to pictures taken of a prepubescent child. Lozano further admitted that, a couple of days later, she took some additional photos of the child while the child was sleeping. At the time, the child had only a night shirt and panties on. Those pictures were sent to the defendant's cellular telephone. The defendant possessed the photographs on his phone while residing in the Eastern District of Tennessee. On May 9, 2014, an examiner with the FBI conducted a forensic interview of the aforementioned minor child. During the interview, the child identified nude photos of herself, indicating that they were photos possessed by the defendant and Lozano.
>
> On June 12, 2014, a search warrant and arrest warrant were executed at the residence of Lozano. Lozano agreed to talk with FBI agents, and admitted that she had taken photographs of a minor child's vagina. The photos were taken on a Casio Exilim C721 cellular telephone, which was manufactured outside the United States. The defendant gave Lozano the telephone. After taking the pictures, Lozano sent them to the defendant via text message to the defendant's cellular telephone.
>
> On June 27, 2014, FBI agents in the Eastern District of Michigan executed a search warrant and arrest warrant at the residence of the defendant. Two laptop computers and a cellular telephone were seized during the search, all of which were manufactured outside the State of Tennessee. A forensic examination of the computers and cellular telephone revealed the presence of child pornography, including photographs of the aforementioned prepubescent child, which had been texted by Lozano to Freeman.
>
> The defendant admits that he knowingly possessed visual depictions of child pornography, depicting a lascivious exhibition of the genitals of prepubescent children, and that said visual depictions traveled in interstate commerce.

[Plea Agreement at 2–3]. In the plea agreement, Mr. Freeman agreed to a waiver provision, in which he waived his right to collaterally attack his sentence and conviction but with the exception that he could pursue claims for prosecutorial misconduct and ineffective assistance of counsel. [*Id.* at 8].

Leading up to Mr. Freeman's sentencing, the probation officer prepared and filed a presentence investigation report, in which he applied several offense-specific enhancements: (1) a two-level increase under USSG § 2G2.2(b)(2) because the pornographic images involved a prepubescent minor, (2) a four-level increase under § 2G2.2(b)(4) because the pornographic images portrayed sadistic or masochistic conduct or other depictions of violence, (3) a five-level increase under § 2G2.2(b)(5) because Mr. Freeman engaged in a pattern of activity involving sexual exploitation or abuse of a minor, (4) a two-level increase under § 2G2.2(b)(6) because his offense involved use of a computer, and (5) a three-level increase under § 2G2.2(b)(7)(B) because his offense involved at least 150, but fewer than 300, pornographic images. [PSR, Doc. 109, ¶¶ 30–34, No. 2:14-CR-00073-2-JRG].

The probation officer also concluded that Mr. Freeman, under 18 U.S.C. § 2252A(b)(2),[3] was subject to an enhanced statutory penalty of ten to twenty years' imprisonment because he had a prior conviction for second-degree criminal sexual conduct with a minor in Michigan—a prior conviction for which he received a prison sentence. [*Id.* ¶¶ 46, 68].[4] Mr. Freeman's attorney did not dispute that Mr. Freeman was subject to this enhanced statutory penalty. With a criminal

_____

[3] Section 2252A(b)(2), in relevant part, states that "[w]hoever violates . . . subsection (a)(5) shall be fined under this title or imprisoned not more than 10 years, or both, but . . . if such person has a prior conviction . . . under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward . . . such person shall be fined under this title and imprisoned for not less than 10 years nor more than 20 years."

[4] Mr. Freeman tied down his eight-year-old half-niece, digitally penetrated her until she bled, and threatened to kill her if she told anyone that he sexually assaulted her. [PSR ¶ 46]. A few years earlier, he had pleaded no contest to the attempted sexual criminal assault of a six-year-old. [*Id.* ¶ 45].

3

history category of II and a total offense level of 31, Mr. Freeman had an advisory guidelines range of 121 to 151 months' imprisonment, [*id.* ¶ 69; Statement of Reasons, Doc. 124, at 1, No. 2:14-CR-00073-2-JRG], and he faced a minimum term of supervision of five years and a maximum term of life, 18 U.S.C. § 3583(k). Applying this guidelines range and a statutory range of a mandatory minimum ten years up to a maximum of twenty, [Sent. Hr'g Tr., Doc. 142, at 49:19–21], the Court sentenced him to 151 months' imprisonment and a lifetime term of supervised release, [J., Doc. 123, at 2–3, No. 2:14-CR-00073-2-JRG]. The Court also ordered him to comply with several special conditions of supervised release under Standing Order 15-06, including:

(1) The defendant shall participate in a program of sex offender mental health treatment at his/her own expense, as approved by the probation officer, until such time as he/she is discharged from treatment by the provider and as approved by the probation officer. The defendant shall comply with the policies and procedures of the treatment program. The defendant shall waive all rights to confidentiality regarding sex offender mental health treatment in order to allow release of information to the United States Probation Officer, and to authorize open communication between the probation officer and the treatment providers.

(2) The defendant shall have no direct or third-party contact, by any means available to him/her, with any victim(s) of a sex offense committed by the defendant.

(3) Other than incidental contact, which is defined as contact occurring merely by chance or without intention or calculation, the defendant shall not associate and/or be alone with children under 18 years of age, nor shall he/she be at any residence where children under the age of 18 are residing, without the prior written approval of the probation officer. If the defendant has any contact with any such minor not otherwise addressed in this condition, the defendant shall immediately leave the situation and notify the probation officer. This provision shall not apply to contact with the defendant's own minor children unless the court expressly so finds.

(4) The defendant shall not visit, frequent, or linger about any place that is primarily associated with children under the age of 18 or at which children under the age of 18 normally congregate without the prior written approval of the probation officer.

4

(5)    The defendant shall not associate with anyone, under any circumstance, that he/she knows to be a sex offender, someone who engages in sexual activity with children under 18 years of age, or someone who condones and/or supports the sexual abuse/exploitation of children under 18 years of age (e.g., NAMBLA, BOYCHAT, Boylover Message Board), except while participating in sex offender mental health treatment or for employment purposes as approved by the probation officer.

(6)    The defendant shall not possess any printed photographs, paintings, recorded material, or electronically produced material designed to produce arousal of sexual interest in children under 18 years of age. Nor shall he/she visit, frequent, or linger about any place where material designed to produce arousal of sexual interest in children is available to him/her.

(8)    The defendant shall submit to a psychosexual assessment at his/her own expense, as directed by the probation officer.

(9)    The defendant shall submit to polygraph testing at his/her own expense, as directed by the probation officer, in order to determine if he/she is in compliance with the conditions of supervision, or to facilitate sex offender treatment. The defendant shall be truthful during polygraph evaluations.

(10)    All residences and employment shall be approved in advance by the probation officer. The defendant shall not participate in any volunteer activities requiring unsupervised contact with children under the age of 18, without the approval of the probation officer. The defendant shall not engage in an activity that involves being in a position of trust or authority over any child or children under the age of 18.

(11)    The defendant shall submit his/her person, residence, vehicle, or any area over which he/she exercises control to a search conducted by a probation officer with reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the defendant, at any time without prior notice or search warrant, in order to determine if the defendant is in compliance with the conditions of supervision. The defendant shall warn anyone with whom he/she resides that the premises may be subject to searches pursuant to this condition.

(12)    The defendant shall not possess or use a computer or any other electronic device with access to the Internet or any other on-line computer service at any location (including employment), without the approval of the probation officer.

(13)    The defendant shall not possess or use any data encryption, data elimination, or access-protection technique, device, or program designed to conceal, eliminate, or corrupt material that is illegal, designed to produce a sexual interest in children under 18 years of age, or prohibited by the probation officer.

[J. at 4].

Mr. Freeman appealed the Court's sentence, arguing, "for the first time," that his prior conviction in Michigan was not an offense that triggered 18 U.S.C. § 2252A(b)(2)'s enhanced penalties. [Sixth Circuit Order, Doc. 146, at 1, No. 2:14-CR-00073-2-JRG]. More specifically, he maintained on appeal "that his prior Michigan conviction for second-degree criminal sexual conduct . . . does not relate to the generic federal offenses under the categorical approach applying the least-culpable-conduct principle." [*Id.* at 2]. The Sixth Circuit, however, rejected Mr. Freeman's argument and upheld his sentence because he failed to establish that this Court committed plain error in applying § 2252A(b)(2)'s enhancement. [*Id.*].

Now, Mr. Freeman moves the Court to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The United States opposes his motion. Having carefully reviewed and considered Mr. Freeman's claims and the parties' arguments, the Court is now prepared to rule on them.

## II. STANDARD OF REVIEW

Under § 2255, "[a] prisoner in custody under sentence of a [federal] court . . . claiming the right to be released . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). A court must vacate and set aside a sentence if it concludes that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." *Id.* § 2255(b). To warrant relief for a denial or infringement of a constitutional right, a petitioner has to establish an "error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). To warrant relief for a non-constitutional claim, a petitioner must establish that a fundamental

defect in the proceeding resulted in a complete miscarriage of justice or an egregious error that deprived him of "the rudimentary demands of fair procedure." *Reed v. Farley*, 512 U.S. 339, 354 (1994); *see Grant v. United States*, 72 F. 3d 503, 505–06 (6th Cir. 1996).

In sum, "[a] prisoner seeking relief under § 2255 'must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (quotation omitted). In support of one of these three bases for relief, a petitioner's allegations must consist of sufficient facts showing he is entitled to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972). "Generally, courts have held that 'conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255.'" *Jefferson v. United States*, 730 F.3d 537, 547 (6th Cir. 2003) (quotation and citation omitted). And similarly, if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," he will not receive an evidentiary hearing. *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003) (quoting *Fontaine v. United States*, 411 U.S. 213, 215 (1973)).

A petitioner has the burden of proving that "an error has occurred that is sufficiently fundamental to come within" one of the three "narrow limits" for § 2255 relief. *United States v. Addonizio*, 442 U.S. 178, 185 (1979); *see Pough*, 442 F.3d at 964. The standard that governs collateral review under § 2255, as opposed to direct review on appeal, is significantly higher. *United States v. Frady*, 456 U.S. 152, 162–66 (1982); *see Hampton v. United States*, 191 F.3d `695, 698 (6th Cir. 1999) ("Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" (quoting *Reed*, 512 U.S. at 354)). This is so because "[t]he reasons for narrowly limiting the grounds for collateral attack on final judgments are well known and

basic to our adversary system." *Addonizio*, 442 U.S. at 184 (footnote omitted); *see Custis v. United States*, 511 U.S. 485, 497 (1994) ("'[I]nroads on the concept of finality tend to undermine confidence in the integrity of our procedures' and inevitably delay and impair the orderly administration of justice." (quotation omitted)); *Parke v. Raley*, 506 U.S. 20, 29 (1992) (referring to a "presumption deeply rooted in our jurisprudence: the 'presumption of regularity' that attaches to final judgments" (quotation omitted)).

## III. ANALYSIS

In pursuing relief under § 2255, Mr. Freeman raises a battery of claims of ineffective assistance of counsel. His claims include allegations that his attorney was ineffective because she did not challenge the application of § 2252A(b)(2) to his sentence, did not investigate the case and the witnesses against him, did not file a renewed motion to dismiss the indictment, did not object to the Court's consideration of his psychological exams during sentencing, did not object to certain guidelines enhancements, did not object to the Court's imposition of a lifetime term of supervised release, did not file a suppression motion, did not object to venue, did not seek dismissal of the indictment under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, and did not file a notice of appeal. He also contends that he unknowingly and involuntarily entered into his plea agreement, and he claims that Ms. Lozano's and the minor victim's statements to law enforcement lack sufficient indicia of reliability to support his guilty plea. Lastly, he claims that the United States engaged in prosecutorial misconduct.

### A. Ineffective Assistance of Counsel: Conduct that Arose before the Guilty Plea

The Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." This right is the right not merely to representation but to *effective* representation. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14

8

(1970). When a petitioner contests his sentence by raising the specter of ineffective assistance of counsel, he normally can succeed only by satisfying the familiar *Strickland* test, a two-pronged test that requires a showing of deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). To establish deficient performance, a petitioner must show that his counsel, through the prism of an objective standard of reasonableness, "made errors so serious that counsel was not functioning as the 'counsel' guaranteed" by the Sixth Amendment. *Id.* at 687. And to establish prejudice, a petitioner must demonstrate that his counsel's deficient performance was so serious that it deprived him of his fundamental right to due process, *id.*, or in other words, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.[5] A court has license to address the two prongs of the bipartite test in any order, and if a petitioner fails to establish either prong of this test, his claim of ineffective assistance of counsel fails. *Id.* at 697.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) (citations omitted). Indeed, "[c]ounsel's performance is strongly presumed to be effective." *Jones v. Bell*, 801 F.3d 556, 562 (6th Cir. 2015) (quotation omitted); *see Thelen v. United States*, 131 F. App'x 61, 63 (6th Cir. 2005) ("A deferential standard of review applies to ineffective assistance claims. A defendant must show that counsel's representation was so 'thoroughly ineffective that defeat was 'snatched from the jaws of victory.'" (quoting *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996))); *see also Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular

---

[5] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

9

act or omission of counsel was unreasonable." (citation omitted)). Even if a particular aspect of counsel's performance proves to be deficient, that deficiency "does not warrant setting aside the judgment of a criminal proceeding" unless it has a prejudicial effect on the judgment. *Strickland*, 466 U.S. at 691 (citation omitted).

Mr. Freeman claims that his attorney was ineffective for allegedly failing to investigate certain aspects of his case and to interview several witnesses, including the minor victim and Ms. Lozano. [Pet'r's § 2255 Mot. at 10–13, Pet'r's Am. § 2255 Mot. at 10]. He asserts that his attorney should have reviewed metadata of the pictures [containing child pornography]," which he claims would have shown that he did not knowingly possess child pornography. [Pet'r's First Mot. for Discovery, Doc. 4, at 6]. In addition, he faults his attorney for failing to review SORNA records, which he claims would have offered her a jurisdictional basis to attack the indictment because they would have shown he was in Michigan and not Tennessee at the time of the crime. [*Id.* at 6–8]. Lastly, he maintains that his attorney was ineffective for failing to review certain e-mails, text messages, and phone records, which he claims would have revealed that "there [was] no communication between Lozano and [him] as alleged in the indictment" and no evidence of abuse of the minor victim. [*Id.* at 11].

According to Mr. Freeman, all these materials that his attorney had allegedly failed to review "will also show that he did not request by any means to receive any child pornography, nor did he knowingly and intentionally possess it." [*Id.* at 8–9]. But as the United States points out, Mr. Freeman appears to lose sight of the fact that he pleaded guilty to the very offense that he now claims is devoid of evidence to support his conviction. [United States' Resp. at 24–25]. The United States argues that Mr. Freeman is bound by the factual basis in his plea agreement

10

and that he therefore lacks good cause to seek evidence to undermine the admissions he made in this factual basis. [*Id.* at 25, 36].

Indeed, Mr. Freeman avowed to the Court—under oath—that he had read his plea agreement, that the plea agreement's factual basis was true and correct, and that he was pleading guilty because he was in fact guilty:

> Q: Now, this plea agreement filed with the Court contains a stipulation of facts which has been included in this plea agreement for the purpose of establishing the required factual basis. The stipulation is contained in paragraph three of the plea agreement. Mr. Freeman, did you read paragraph three of the plea agreement carefully?
>
> A: Yes, Your Honor.
>
> Q: And did you review the stipulation of facts contained in paragraph three of this plea agreement carefully with your attorney?
> A: Yes, Your Honor.
>
> Q: Do you agree with the summary of what you did in this case that's set out in paragraph three of your plea agreement?
>
> A: Yes, Your Honor.
>
> A: And do you stipulate here today under oath that the facts contained in paragraph three of this plea agreement are true and correct?
>
> A: Yes.
>
> Q: And do you stipulate here this afternoon under oath that the facts contained in paragraph 4 of your plea agreement are true and correct?
>
> A: Yes, sir.
>
> . . . .
>
> Q: All right, Mr. Freeman, how do you plead then as to Count Four of the superseding indictment in this case which charges you with possession of child pornography in violation of Title 18, United States Code, Section 2252A, Subsection (A)(5)(B), are you guilty or not guilty?
>
> A: Guilty, Your Honor.

11

Q: And do you understand what it is you're pleading guilty to?

A: Yes, Your Honor.

Q: And are you offering to plead guilty because you are in fact guilty?

A: Yes, Your Honor.

[Plea Hr'g Tr., Doc. 133, at 31:24–25; 32:1–20; 33:5–16, No. 2:14-CR-00073-2-JRG]. Mr. Freeman, however, now describes his guilty plea as "unknowing, involuntary, and inaccurate" because his attorney committed two errors, and he suggests that, if not for these errors, he would have gone to trial. [Pet'r's Am. Mot. at 12–13]. *Strickland*'s two-pronged test applies to a petitioner's challenge of a guilty plea based on a claim of ineffective assistance of counsel, *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), though the second prong of prejudice requires Mr. Freeman to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," *id.* at 59 (footnote omitted).

Mr. Freeman offers two reasons why he would not have pleaded guilty and would have insisted on going to trial but for his attorney's alleged errors. First, he argues that his attorney erred because she advised him that he could be convicted of all three charges in the indictment and face an effective life sentence if the Court ran the sentences for each charge consecutively to each other. [Pet'r's Am. Mot. at 12]. He claims this advice was error because "[p]ossession is a lesser included violation of receipt." [*Id.* (citing *United States v. Ehle*, 640 F.3d 689, 698 (6th Cir. 2011))]. Second, he maintains that his attorney wrongly advised him that his prior conviction—i.e., his conviction for second-degree criminal sexual conduct with a minor in Michigan—subjected him to the enhanced statutory penalty under § 2252A(b)(2). [*Id.* at 1–4, 12–13].

12

1. Failure to Provide Objectively Reasonable Advice as to Sentence
   Exposure: Possession versus Receipt

As a general matter, an attorney's failure to give objectively reasonable "guidance to a defendant regarding his sentence exposure prior to a plea may constitute deficient assistance." *Moss v. United States*, 323 F.3d 445, 474 (6th Cir. 2003) (citation omitted); *see Moore v. Bryant*, 348 F.3d 238, 241 (7th Cir. 2003) ("A reasonably competent counsel will attempt to learn all of the facts of the case, make an estimate of a likely sentence, and communicate the results of that analysis before allowing his client to plead guilty." (citation omitted)). As to Mr. Freeman's first argument, he is correct that possession of child pornography under § 2252A(a)(5)(B) is a lesser-included offense of receipt of child pornography under § 2252A(a)(2), *Ehle*, 640 F.3d at 698, but he fails to recognize that when charges under these two statutes "stem from different acts or transactions," possession is not a species of lesser-included offense but is a separate statutory offense, *United States v. Faulkner*, 730 F. App'x 325, 328–29 (6th Cir. 2018) (citation omitted); *see United States v. Dudeck*, 657 F.3d 424, 430 (6th Cir. 2011) ("[W]hile possession of child pornography is generally a lesser-included offense of receipt of child pornography, conviction under both statutes is permissible if separate conduct is found to underlie the two offenses."). In assessing whether charges of receipt and possession have separate factual bases, the Court may look to the indictment, the plea agreement, and the presentence investigation report. *See Dudeck*, 657 F.3d at 430.

In Count Three and Count Four of the superseding indictment, the United States does nothing more than track the statutory language of § 2252A(a)(2) and § 2252A(a)(5)(B), so it is of little use to the Court's analysis, but the plea agreement and the presentence investigation

13

report[6] show that the United States had enough evidence to charge Mr. Freeman with different acts of receipt and possession. The United States describes these separate acts in its response. The first act of receipt and possession occurred when Ms. Lozano, at Mr. Freeman's behest, texted pornographic images of the minor victim to Mr. Freeman's cell phone, [Plea Agreement at 2–3], and the second act occurred when Mr. Freeman had downloaded to his cell phone over 200 pornographic images of *other* prepubescent minors, [PSR ¶ 22].[7]

In short, the record shows that Mr. Freeman received and possessed "separate illicit items," *Dudeck*, 657, F.3d at 430, each of which could have formed the basis for his convictions under § 2252A(a)(2) *and* § 2252A(a)(5)(B) if the United States had elected to pursue them, *see United States v. Overton*, 573 F.3d 679, 697 (9th Cir. 2009) (noting that the defendant's charge for receipt was based on images he had downloaded from the internet, whereas his charge for possession was based on images that he had taken of his minor stepdaughter); *see also United States v. Bobb*, 577 F.3d 1366, 1375 (11th Cir. 2009) (ruling that the defendant's charge for receipt was based on seven zip files containing pictures, whereas his charge of possession was based on more than 6,000 other pictures). Under these circumstances, Mr. Freeman's attorney did not engage in objectively unreasonable conduct by informing him that the United States' evidence was adequate to enable a jury to convict Mr. Freeman on separate charges of receipt and possession.

And lastly, although Mr. Freeman claims that his attorney incorrectly advised him that he could "face a sentence running all three counts consecutively, effectively giving him a life

---

[6] As a general matter, when a defendant does not "produce some evidence that calls the reliability or correctness of the alleged facts [in the PSR] into question," a district court "may rely entirely on the PSR." *United States v. Lang*, 333 F.3d 678, 681 (6th Cir. 2003) (quotation omitted); *see United States v. Roark*, 403 F. App'x 1, 4 n.2 (6th Cir. 2010) ("[T]he PSR *is* evidence, at least in the sense that it may be considered at sentencing." (citing *United States v. Silverman*, 976 F.2d 1502, 1511 (6th Cir. 1992))).

[7] These are the images that triggered § 2G2.2(b)(4)'s four-level enhancement because they portrayed sadistic or masochistic conduct.

14

sentence," he goes on to allege that his attorney ultimately advised him that, if he did not enter

into a plea agreement, his estimated term of incarceration would be "25 plus years in prison."

[Pet'r's Am. Mot. at 12]. His attorney's estimate was correct and does not constitute deficient

performance. *See* 18 U.S.C. § 2251(e) ("Any individual who violates . . . this section shall be

fined under this title and imprisoned not less than 15 years nor more than 30 years, but if such

person has one prior conviction . . . under the laws of any State relating to aggravated sexual

abuse, sexual abuse, abusive sexual contact involving a minor or ward, or sex trafficking of

children, or the production, possession, receipt, mailing, sale, distribution, shipment, or

transportation of child pornography, such person shall be fined under this title and imprisoned

for *not less than 25 years* nor more than 50 years[.]" (emphasis added)). Mr. Freeman therefore

falls short of establishing that his attorney rendered ineffective assistance of counsel, and he is

not entitled to the extraordinary remedy of § 2255 relief.

> 2. Failure to Challenge § 2252A(b)(2)'s Statutory Enhancement: The
>    Categorical Approach

As to Mr. Freeman's second argument—i.e., his argument that his attorney wrongly

advised him that his previous conviction in Michigan subjected him to the enhanced penalty

under § 2252A(b)(2)—it too lacks merit. Mr. Freeman contends that his attorney should have

objected to the Court's decision to apply § 2252A(b)(2)'s enhanced penalty to his sentence because

the Court did not apply "the categorical approach to determine whether [his] convictions qualify

as 'aggravated sexual abuse, sexual abuse, or abusive sexual contact involving a minor or ward'

under 18 U.S.C. § 2252(b)(2)." [Pet'r's Mot., Doc. 1, at 1–3, 12 (quoting § 2252(b)(2))]. As the

United States rightly argues, however, the Sixth Circuit, in addressing Mr. Freeman's appeal,

observed that this circuit lacks "binding case law that answers the question of whether Michigan's

second-degree criminal sexual conduct statute relates to the federal generic offenses of sexual

abuse and abusive sexual conduct involving a minor or ward." [Sixth Circuit Order at 2]. His attorney's failure to raise an unsettled issue of law does not constitute deficient performance under *Strickland*. *See New v. United States*, 652 F.3d 949, 952 (8th Cir. 2011) ("A failure to raise arguments that require the resolution of unsettled legal questions generally does not render a lawyer's services 'outside the wide range of professionally competent assistance' sufficient to satisfy the Sixth Amendment." (quoting *Strickland*, 466 U.S. at 690)); *cf. Alcorn v. Smith*, 781 F.2d 58, 62 (6th Cir. 1986) (stating that "nonegregious errors such as failure to perceive or anticipate a change in the law . . . generally cannot be considered ineffective assistance of counsel").

Indeed, although the Constitution guarantees criminal defendants "a fair trial and a competent attorney," "[i]t does not insure that defense counsel will recognize and raise every conceivable constitutional claim." *Engle v. Isaac*, 456 U.S. 107, 134 (1982). Mr. Freeman's preference may have been for his attorney to contest the Court's application of § 2252A(b)(2) by raising the same argument that he later raised on appeal, but his attorney did not necessarily have a *duty* to raise this argument. *See Gazzola v. United States*, Nos. 4:13–cv–74, 4:11–cr–39, 2014 WL 2196273, at *9 (E.D. Tenn. May 27, 2014) ("[C]ounsel has no duty to raise every nonfrivolous issue that a criminal defendant requests." (citing *Jones v. Barnes*, 463 U.S. 745, 754 (1983))); *see also Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (stating that "the Sixth Amendment guarantees reasonable competence, not perfect litigation" (citation omitted)).

Instead, his attorney had license to exercise her professional judgment by raising some nonfrivolous arguments at the exclusion of others, in an effort to maximize the chance of success. *Cf. McFarland v. Yukins*, 356 F.3d 688, 710 (6th Cir. 2004) (stating that "the decision of which among the possible claims to pursue is ordinarily entrusted to counsel's professional judgment"

16

(citing *Smith v. Murray*, 477 U.S. 527, 536 (1986))). Mr. Freeman's attorney raised numerous objections on Mr. Freeman's behalf at sentencing—fourteen of them, in total—and the Court will not, and cannot, "second-guess" her decision to raise those objections and not others without substantive allegations that cast a pall of unreasonableness over her decision. *Strickland*, 466 U.S. at 689; *see id.* ("Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." (citation omitted)); *Jones*, 801 F.3d at 562 (stating that "[c]ounsel's performance is strongly presumed to be effective" (alteration in original) (quotation omitted))). Indeed, "only when ignored issues are *clearly stronger* than those presented, will the presumption of effective assistance of counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (emphasis added) (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). Mr. Freeman, though, makes no meaningful attempt to address whether, and how, the fourteen objections that his attorney raised were any weaker or stronger than the objection that he faults her for not raising under § 2252A(b)(2).

Besides, Mr. Freeman previously argued on direct appeal "that his prior Michigan conviction for second-degree criminal sexual conduct . . . does not relate to the generic federal offenses under the categorical approach applying the least-culpable-conduct principle," and the Sixth Circuit rejected his argument because he failed to show that the Court erred in applying the enhancement. [Sixth Circuit Order at 2]. Now, here in this § 2255 proceeding, the Court is loath to allow Mr. Freeman to get a second crack at this defunct argument by raising a new iteration of it for this Court's consideration—this time in the context of ineffective assistance of counsel. *See Dado v. United States*, No. 17-2013, 2018 WL 1100279, at *2 (6th Cir. Feb. 15, 2018)

17

("Section 2255 motions may not be used to relitigate issues that have been considered by a United States Court of Appeals." (citing *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996))). While the Court is aware that claims of ineffective assistance of counsel should "be litigated in the first instance in the district court," *Massaro v. United States*, 538 U.S. 500, 505 (2003), the Sixth Circuit's decision to uphold this Court's application of § 2252A(b)(2) would appear to scuttle Mr. Freeman's claim of ineffective assistance of counsel, *see Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999) ("Counsel could not be unconstitutionally ineffective for failing to raise [a] meritless argument.").

In any case, the Court fails to see—and Mr. Freeman fails to effectively argue—what prejudice if any resulted from the Court's application of the enhancement under § 2252A(b)(2), in which Congress mandates the imposition of a mandatory minimum sentence of 120 months and authorizes a maximum sentence of 240 months. Although "attorney errors resulting in increased prison time can constitute prejudice," *Thelen*, 131 F. App'x at 65–66, Mr. Freeman offers no viable argument that his attorney's failure to challenge the enhancement did in fact result in increased prison time for him. He asserts only that he "was prejudiced, by receiving a sentencing enhancement that would not otherwise apply, and giving him a sentence beyond the statutory maximum of 120 months." [Pet'r's Am. Mot. at 11; *see id.* (claiming that the underlying proceedings were unfair because he was "sentenced in excess of his statutory maximum sentence")]. But contrary to Mr. Freeman's assertion, the Court did not sentence him to the statutory maximum or to a sentence beyond the statutory maximum, which was 240 months and not 120 months. 18 U.S.C. § 2252A(b)(2). Rather, the Court sentenced him to a guidelines-range sentence of 151 months, which is a sentence that fell well below the statutory maximum sentence of 240 months. And even if the Court had not applied § 2252A(b)(2)'s enhancement, Mr.

18

Freeman's advisory guidelines range still would have surpassed the 120-month threshold that he complains of because the low-end range of that range was 121 months.[8]

So, in sum, Mr. Freeman provides the Court with no basis to conclude that he is facing increased prison time because of his attorney's failure to challenge the enhancement, and his allegations as a whole, for all the reasons the Court has mentioned, do not show that his attorney committed an error of constitutional magnitude by not contesting the Court's application of § 2252A(b)(2)'s enhancement. He therefore fails to show that he is entitled to the extraordinary remedy of § 2255 relief.

### 3. Mr. Freeman's Knowing and Voluntary Guilty Plea

Because Mr. Freeman relies on two meritless arguments to attack the knowing and voluntary nature of his guilty plea, his "[s]olemn declarations [of guilt] in open court carry a strong presumption of verity," and his declarations, as well as the Court's findings, "constitute a formidable barrier in any subsequent collateral proceeding." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977), *see Marks v. Davis*, 504 F. App'x 383, 386 (6th Cir. 2012) (acknowledging "the plea transcript itself carries great weight" (citing *id.*)); *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) ("[W]here the court has scrupulously followed the required procedure [during a plea colloquy], 'the defendant is bound by his statements in response to that court's inquiry.'" (quotation omitted)); *see also Custis v. United States*, 511 U.S. 485, 497 (1994) ("[The concept of finality] bear[s] extra weight in cases in which the prior convictions . . . are based on guilty pleas, because when a guilty plea is at issue, 'the concern with finality served by the limitation on collateral attack has special force.'" (quotation omitted)); *Luster v. United States*, 168 F.3d

---

[8] Although Mr. Freeman argues that "his correctly calculated guidelines would be category II, level 17, which equals 22–33 months," he cites no factual or legal grounds to support this argument. [Pet'r's Am. Mot. at 38].

913, 916 (6th Cir. 1999) ("[The defendant's] plea serves as an admission that he is not innocent of the crimes charged." (citation omitted)). Along these same lines, "[a] motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction." *United States v. Vargas-Gutierrez*, 464 F. App'x 492, 496 (6th Cir. 2012) (quoting *United States v. Shah*, 453 F.3d 520, 523 (D.C. Cir. 2006)). Mr. Freeman has no such compelling explanation, only meritless arguments, as the Court has shown through its analysis.

His knowing and voluntary guilty plea therefore forecloses his claim that he is innocent, his claim that Ms. Lozano's and the minor victim's statements lack indicia of reliability to support his guilty plea, and his claims that his attorney failed to investigate the case and the witnesses against him, failed to file a suppression motion, failed to file a renewed motion to dismiss, failed to object to venue, and failed to seek dismissal of the indictment under the Speedy Trial Act— all of which, by his own allegations, took place before his guilty plea. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that [may have] occurred prior to the entry of the guilty plea.").

### B. Ineffective Assistance of Counsel: Conduct that Arose after the Guilty Plea

Mr. Freeman's remaining claims of ineffective assistance of counsel—his attorney's alleged failure to object to the Court's consideration of his psychological exams at sentencing, failure to object to certain guidelines enhancements, failure to object to the Court's imposition

of a lifetime term of supervised release, and failure to file a notice of appeal—all arose after his guilty plea. The Court will now review these claims under *Strickland*'s two-part test.

1. Failure to Object to the Court's Consideration of Psychological Exams during Sentencing

During Mr. Freeman's sentencing hearing, the Court made the following observations related to Mr. Freeman's psychological exams:

> The Bureau of prisons diagnosed you with a pedophilic disorder with borderline personality disorder with antisocial personality disorder. The examiner at the Bureau of Prisons indicated in the report that you minimize the degree of sexual arousal to prepubescent children and you minimize the consequences of your conduct to the victims; and as a result, the Bureau of Prisons says your prognosis, your psychological prognosis is guarded. So it seems to me, Mr. Freeman, that there needs to be a sentence imposed here which will specifically deter you from further criminal conduct. One thing is certain in my mind, a period of lifetime supervision is necessary to accomplish that. You should not ever again be unsupervised by a probation officer.

[Sent. Hr'g Tr. at 84:3–16]. Mr. Freeman argues that his attorney was ineffective for failing to object to the Court's consideration of his psychological exams during sentencing, and in doing so, he cites Federal Rule of Criminal Procedure 12.2(c)(4), which states:

> (4) Inadmissibility of a Defendant's Statements. No statement made by a defendant in the course of any examination conducted under this rule (whether conducted with or without the defendant's consent), no testimony by the expert based on the statement, and no other fruits of the statement may be admitted into evidence against the defendant in any criminal proceeding except on an issue regarding mental condition on which the defendant:
>
> > (A) has introduced evidence of incompetency or evidence requiring notice under Rule 12.2(a) or (b)(1), or
> >
> > (B) has introduced expert evidence in a capital sentencing proceeding requiring notice under Rule 12.2(b)(2).

Fed. R. Crim. P. 12.2(c)(4)(A)–(B).

According to Mr. Freeman, the Court's comments related to his psychological exams were "in direct violation of" Rule 12.2(c)(4), [Pet'r's Am. Mot. at 35]. But Rule 12.2(c)(4)'s plain

21

language precludes, in relevant part, the *admission* into evidence of "fruits of [a defendant's] statement" from an exam under 18 U.S.C. § 4241, Rule 12.2(c)(4), and it does not apply here because neither party moved for admission of these statements into evidence at the sentencing hearing. And, importantly, Rule 12.2(c)(4) says nothing about a district court's authority to consider these types of statements under its own volition when balancing the factors under 18 U.S.C. § 3553(a).

As the United States correctly points out, typically "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. The Court, therefore, may "conduct an inquiry broad in scope, largely unlimited either as to the kind of information [it] may consider, or the source from which it may come." *Pepper v. United States*, 562 U.S. 476, 489 (2011) (footnote and quotation omitted). This information "need only relate to one of the § 3553(a) factors," *United States v. Cunningham*, 669 F.3d 723, 735 (6th Cir. 2012) (citation omitted), and one of those factors is the "history and characteristics of the defendant" under § 3553(a)(1), 18 U.S.C. § 3553(a)(1).

In this vein, the Sixth Circuit has held that "[a] report generated from a defense-requested, voluntarily taken competency exam falls within the broad range of factors a court may consider at sentencing" so long as "(1) the report was reliable, (2) the defendant requested the exam, and (3) the defendant voluntarily consented to the exam." *United States v. Shalash*, 759 F. App'x 387, 393–394 (6th Cir. 2018) (citing *United States v. Graham-Wright*, 715 F.3d 598, 601–03 (6th Cir. 2013)). Mr. Freeman requested the psychological exams, *see* [Def.'s First Mot. for Psych Exam, Doc. 40; Order Granting Def.'s Oral Mot. for Second Psych Exam, Doc. 78], and everything in

22

the record suggests that he submitted to the exams and spoke voluntarily during them, *see* [First Psych Report, Doc. 47, at 1; Second Psych Report, Doc. 87, at 3]. In addition, Mr. Freeman does not argue—and nor can he argue—that the psychological exams were unreliable. *See Shalash*, 759 F. App'x at 394 ("In sentencing, after all, reliability is the central question, and the report was 'real information from a real psychiatrist after a voluntary examination.'" (quoting *Graham-Wright*, 715 F.3d at 604)).

So, in sum, Mr. Freeman's attorney had no valid legal basis to object to the Court's consideration of Mr. Freeman's psychological exams at sentencing, and she was not ineffective for failing to do so. *See Mapes*, 171 F.3d at 427 (recognizing that "[c]ounsel could not be unconstitutionally ineffective for failing to raise [a] meritless argument"). Mr. Freeman does not, therefore, establish that his attorney rendered ineffective assistance of counsel, and he is not entitled to the extraordinary remedy of § 2255 relief.

### 2. Failure to Object to Guidelines Enhancements

Next, Mr. Freeman faults his attorney for not "properly" objecting to the numerous offense-specific enhancements that he received under the Sentencing Guidelines. [Pet'r's Am. Mot. at 37]. In response, the United States argues that his attorney did in fact object to the enhancements at issue and, even if she had not objected to them, Mr. Freeman's claim would still fail because his allegations are conclusory. [United States' Resp. at 31].

Mr. Freeman first contends that his attorney "waived the objections making them unpreserved for Appellate review and causing him to be sentenced to more time than he could have received," [Pet'r's Am. Mot. at 37], but this contention is simply untrue, for two reasons. First, Mr. Freeman's attorney never waived her objections; the Court addressed all fourteen of her objections during the sentencing hearing. [Sent. Hr'g Tr. at 49:6–16]. Second, the Court

23

never sentenced Mr. Freeman to "more time than he could have received." [Pet'r's Am .Mot. at 37]. Instead, the Court sentenced him to a guidelines-range sentence of 151 months, which was well below the statutory maximum sentence of 240 months.

Next, Mr. Freeman argues that his attorney failed to object to § 2G2.2(b)(4)'s "Sadio enhancement when no pictures in the indictment were presented," [Pet'r's Am. Mot. at 37], but this argument is also baseless because his attorney did object to this enhancement by arguing that the pictures at issue "do[] not . . . portray[] sadistic or masochistic conduct or other depictions of violence under USSG § 2G2.2(b)(4)," [Notice of Objs., Doc. 113, at 3, No. 2:14-CR-00073-2-JRG]. Mr. Freeman also asserts that his attorney was ineffective because she did not properly object to the five-level enchantment under § 2G2.2(b)(5) for his engagement in a pattern of activity involving the sexual exploitation or abuse of a minor, or the two-level enhancement under § 2G2.2(b)(6) for his use of a computer. [Pet'r's Am. Mot. at 37]. But his attorney did object to the enhancement under § 2G2.2(b)(5), having argued that "[t]he actions averred [in the PSR] do not meet the 'pattern of activity' increase under USSG § 2G2.2(b)(5)," [Notice of Objs. at 3], and Mr. Freeman fails to allege why this objection was inadequate or improper.

In addition, although Mr. Freeman contends that his attorney should have objected to the enhancement under § 2G2.2(b)(6) because the record contains "no evidence that [he] used or intended to use" his cell phone to possess, transmit, receive, or distribute child pornography, the record belies this contention. [Pet'r's Am. Mot. at 37]. For one thing, the plea agreement's factual basis—in which Mr. Freeman admitted that he knowingly possessed images of child pornography on the cell phone that agents seized from him and that those images traveled in interstate commerce, [Plea Agreement at 3]—supports the enhancement. *Cf. Hinton v. United States*, Nos. 1:18-cv-262, 1:16-cr-69, 2021 WL 517843, at *3 (E.D. Tenn. Feb. 11, 2021) ("To the extent

24

Petitioner argues that his counsel was ineffective for failing to object to the firearms enhancement, that argument also fails because the stipulated factual basis contained in Petitioner's plea agreement demonstrates that the firearms enhancement was properly applied."); *Dunlap v. United States*, No. 4:13-CR-523, 2016 WL 775525, at *1 (N.D. Ohio Feb. 29, 2016) ("[A]s a factual matter, the factual basis of the parties' plea and plea agreement sets forth a sufficient basis to support the enhancement."). In addition, Agent Pearson testified that she had seized a cell phone that was in Mr. Freeman's possession, and that cell phone contained over two hundred images of child pornography. [Sent. Hr'g Tr. at 12:11–25, 13:1–8].

So despite Mr. Freeman's assertions to the contrary, the record does contain evidence that triggers § 2G2.2(b)(6)'s enhancement, i.e., evidence that he had used his cell phone to possess, transmit, receive, or distribute child pornography. And although Mr. Freeman also argues that his cell phone was "an older phone that is not similar to the definition Congress adopted when phones turned to smart phones," [Pet'r's Am. Mot. at 37–38], he cites no case law or other legal grounds to support this argument. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quotation omitted)).

Finally, Mr. Freeman maintains that his attorney was ineffective because she failed to object to the enhancement under § 2G2.2(b)(7)(B), which results in a three-level increase if the offense involved at least 150, but less than 300, pornographic images. According to Mr. Freeman, his attorney should have objected to this enhancement because "the indictment only alleges 9 pictures of which several do not constitute as child pornography," [Pet'r's Am. Mot. at 38], but the indictment contains no such allegation, and as the Court has already pointed out, Agent

Pearson testified that Mr. Freeman's cell phone contained over two hundred images of child pornography.

In sum, Mr. Freeman provides the Court with no basis to conclude that his attorney was ineffective for not "properly" objecting to the enhancements that applied to him at sentencing. He does not, therefore, establish that his attorney rendered ineffective assistance of counsel, and he is not entitled to the extraordinary remedy of § 2255 relief.

### 3. Failure to Move for a Downward Departure Based on Mr. Freeman's Childhood of Abuse

In continuing to challenge his attorney's conduct, Mr. Freeman next maintains that his attorney was ineffective because she failed to move for a downward departure based on "[his] child experiences of abuse which are a significant mitigating factor." [Pet'r's Am. Mot. at 38]. Mr. Freeman also claims the Court "erred in failing to adequately acknowledge the significance of this mitigating factor as it spoke of the severity of abuse but acted as if [he] was immune from its effects." [*Id.* at 39]. In response, the United States points out that, while Mr. Freeman's attorney did not raise his alleged childhood abuse as grounds for a downward departure, Mr. Freeman himself broached it in his allocution and that the Court did in fact consider it when balancing § 3553(a)'s factors. [United States' Resp. at 32].

As for Mr. Freeman's first argument that his attorney was ineffective, he fails to allege that he suffered any appreciable form of prejudice from his attorney's failure to move for a downward departure. Mr. Freeman does not allege that his attorney's failure to move for a downward departure resulted in increased prison time, and he also identifies no legal basis by which his attorney *could* have moved for a downward departure. *See Mapes*, 171 F.3d at 427 (recognizing that "[c]ounsel could not be unconstitutionally ineffective for failing to raise [a] meritless argument"). Indeed, a downward departure is permissible in only two circumstances:

26

(1) when a statute allows the Court to depart downward or (2) when the United States decides

that a motion for a downward departure is appropriate under USSG § 5K1.1, and the Court grants

that motion. *United States v. Burke*, 237 F.3d 741, 745 (6th Cir. 2001); *see* 18 U.S.C. § 3553(e),

(f). Mr. Freeman does not argue that a downward departure was attainable under either of these

circumstances.

Also, the United States is correct that the Court did consider Mr. Freeman's history of

childhood abuse—which he broached during his allocation—so Mr. Freeman did not suffer any

prejudice from his attorney's failure to formally address his childhood abuse in a motion for a

downward departure. *See* [Sent. Hr'g Tr. at 89:11–15 (stating that the Court "accept[ed] at face

value [Mr. Freeman's] representation that [he was] physically and sexually abused when [he]

was less than ten years of age," even though "none of that information appears in this presentence

report")]. When imposing sentence, the Court ultimately declined to view his abusive past as a

mitigating factor because "this [was his] third offense involving a minor child," and he had now

"exhausted th[is] plea[]." [*Id.* at 89:21–22]. Although Mr. Freeman now contends that the Court

erred because it gave too little weight to his abusive past, [Pet'r's Am. Mot. at  39], the Court

finds no merit in that argument because it has license to apportion greater weight to a defendant's

criminal history when balancing § 3553(a)'s factors. *See United States v. Clark*,  225 F. App'x

376, 380 (6th Cir. 2007) (affirming the district court's decision to allot "more weight to the

§ 3553(a) factors that relate to the seriousness of the offense, deterrence, and protecting the public"

when the defendant's "criminal history was so significant").

Besides, "an error in the application of the Sentencing Guidelines does not warrant

collateral relief under § 2255 unless there is a complete miscarriage of justice." *Jones v. United

States*, 178 F.3d 790, 796 (6th Cir. 1999) (citation omitted). To meet this "demanding standard,"

Mr. Freeman must "prove that he is either actually innocent of his crime or that a prior conviction used to enhance his sentence has been vacated." *Bullard v. United States*, 937 F.3d 654, 658 (6th Cir. 2019) (quotation omitted); *see Grant v. United States*, 72 F. 3d 503, 506 (6th Cir. 1996) (stating that an error does not rise to a complete miscarriage of justice unless it is "positively outrageous"). Mr. Freeman, however, does not allege—let alone attempt to show—either one.

If anything, the fact that the Court sentenced Mr. Freeman to a term of imprisonment that was well below the statutory maximum speaks to the reasonableness of his sentence, not to an error of outrageous proportions. *See United States v. Peterman*, 249 F.3d 458, 462 (6th Cir. 2001) ("Courts have generally declined to collaterally review sentences that fall within the statutory maximum." (citations omitted)); *see also United States v. Moody*, 433 F. App'x 785, 787 (11th Cir. 2011) ("The reasonableness of a sentence may be indicated when the sentence imposed was well below the statutory maximum sentence." (citing *United States v. Gonzalez,* 550 F.3d 1319, 1324 (11th Cir. 2008))), *cert. denied,* 557 U.S. 928 (2009); *United States v. Foreman*, 401 F. App'x 102, 104 (6th Cir. 2010) ("The sentence [the defendant] received was below the statutory maximum and was adequately supported by § 3553(a) factors. The sentence was substantively reasonable." (citing *United States v. Kontrol,* 554 F.3d 1089, 1093 (6th Cir. 2009))).

In sum, Mr. Freeman musters no viable argument that compels the Court to conclude that his attorney was ineffective for failing to move for a downward departure, or that the Court committed a constitutional or non-constitutional error by finding that his abusive history was not a mitigating factor. He is therefore not entitled to the extraordinary remedy of § 2255 relief.

4.   Failure to Object to the Court's Imposition of a Lifetime Term of Supervision and Special Conditions of Supervised Release

Next, in an effort to attack his custodial sentence, his lifetime term of supervision, and his special conditions of supervised release, Mr. Freeman raises scattershot arguments against their

28

legality. Citing § 3553, which requires the Court to state on the record its reasons for imposing a particular sentence, 18 U.S.C. § 3553(c), he first argues that his sentence violates his due-process rights because the Court "did not state in open court with specify [sic] which conditions [of supervised release] and how they are worded," [Pet'r's Am. Mot. at 39], and did not "explain its decision to impose life time [sic] supervised release," [*id.* at 41]. According to Mr. Freeman, he is "completely deprived of any effective ability to argue against these conditions because the conditions were never told to him nor explained, and the written record does not explicitly state which conditions and how they are worded." [*Id.* at 40]. In addition, he argues that the standard conditions of supervised release are unconstitutionally overbroad, are not reasonably related to the goals of sentencing, and violate his rights under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq.*

As to his lifetime term of supervision, he contends that it is unconstitutional because, "when adding the [custodial] sentence and the supervised release together," it "exceed[s] the statutory maximum." [Pet'r's Am. Mot. at 41]. In addition, he argues that his lifetime term of supervision violates his Fifth and Sixth Amendment rights because it is "a new sentence" and "can be imposed without a jury and only by a preponderance of the evidence." [*Id.* at 42]. In this vein, he asserts that his lifetime term of supervision is unconstitutional because 18 U.S.C. § 3583(k)—the statute that empowers district courts to impose a lifetime term of supervision for defendants who, like Mr. Freeman, violate § 2252A(a)(5)(B)—is "in violation of" the Supreme Court's precedents in *Alleyne v. United States*, 570 U.S. 99 (2013) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), as well as the Tenth Circuit's decision in *United States v. Haymond*, 869 F.3d 1153 (10th Cir. 2017), *vacated and remanded*, 138 S. Ct. 2369 (2019). [*Id.* at 42–43]. In

reciting all these arguments, Mr. Freeman claims that his attorney "utterly failed" him by not raising them on his behalf. [*Id.* at 40].

      a.   *Due Process*

As for Mr. Freeman's lone factually based claim—his claim that his sentence violates his due-process rights because the Court "did not state in open court with specify [sic] which conditions [of supervised release] and how they are worded," [Pet'r's Am. Mot. at 39], and did not explain its decision to impose life time [sic] supervised release," [*id.* at 41]—the Court begins by turning to 18 U.S.C. § 3583(f), whose "ultimate goal is notice and guidance for the defendant," *United States v. Felix*, 994 F.2d 550, 551 (8th Cir. 1993) (citations omitted). Section 3583(f)  states:

> The court shall direct that the probation officer provide the defendant with a written statement that sets forth all the conditions to which the term of supervised release is subject, and that is sufficiently clear and specific to serve as a guide for the defendant's conduct and for such supervision as is required.

The Sixth Circuit has interpreted § 3583(f) to mean that "the sentencing court will *not* read at sentencing each of the standard conditions imposed on a defendant, and will leave the administration of supervision to a duly authorized probation officer" because "[t]he probation officer, not the court, is primarily responsible for apprising the defendant of the standard conditions of supervised release." *United States v. Swanson*, 209 F. App'x 522, 524 (6th Cir. 2006) (footnote and quotation omitted); *United States v. Napier*, 463 F.3d 1040, 1043 (9th Cir. 2006) (stating that standard and mandatory conditions are "sufficiently detailed [so] that many courts find it unnecessarily burdensome to recite them in full as part of the oral sentence" and "[f]or that reason, imposition of these mandatory and standard conditions is deemed to be implicit in an oral sentence imposing supervised release" (citing *United States v. Truscello*, 168 F.3d 61, 62 (2d Cir. 1999))). So to the extent Mr. Freeman argues that he was without adequate notice of the standard and

mandatory conditions of supervised release—which, incidentally, the Court referenced during the sentencing hearing and included in the judgment, [Sent. Hr'g Tr. at 94:17–18; J. at 3]—that argument is a non-starter, *see Swanson*, 209 F. App'x at 524 ("[U]nless the district court specifically says otherwise, the standard conditions of supervised release are deemed included in the oral sentence."). His attorney therefore had no viable legal basis to argue that he lacked adequate notice of the standard and mandatory conditions of supervised release. *See Mapes*, 171 F.3d at 427 ("Counsel could not be unconstitutionally ineffective for failing to raise [a] meritless argument.").

But Mr. Freeman's argument that the Court did not sufficiently explain its reasons for ordering the *special* conditions of supervised release and a lifetime of supervision requires a separate analysis. The Court acknowledges that it must adequately explain its reasons when it orders either special conditions of supervised release or a lifetime term of supervised release. *United States v. Banks*, 722 F. App'x 505, 512 (6th Cir. 2018); *United States v. Inman*, 666 F.3d 1001, 1004 (6th Cir. 2012). First, as to the lifetime term of supervision, the Court must address most of § 3553(a)'s factors before sentencing a defendant to a lifetime of supervised release. *Banks*, 722 F. App'x at 512; *see* 18 U.S.C. § 3583(c) (requiring district courts to weigh most of § 3553(a)'s factors when determining the propriety and length of supervised release). Mr. Freeman's contention that the Court failed to adequately explain its reasons for imposing a lifetime of supervision is a procedural attack against the reasonableness of his sentence. *See United States v. Johnson*, 640 F.3d 195, 201–02 (6th Cir. 2011) (stating that the procedural reasonableness of a sentence can depend on whether the district court "fail[ed] to consider the § 3553(a) factors" or "adequately explain the chosen sentence" (citing *Gall v. United States*, 552 U.S. 38, 51 (2007))). Mr. Freeman's contention is baseless.

Although the Court did not explicitly or individually address § 3553(a)'s factors when it explained its reasons for ordering a lifetime term of supervision, it methodically addressed those factors when it fashioned Mr. Freeman's custodial sentence. [Sent. Hr'g Tr. at 78:13–25, 79:1–25, 80:1–25, 81:1–25, 82:1–25, 83:1–25, 84:1–25, 85:1–25, 86:1–25, 87:1–25, 88:1–25, 89:1–25, 90:1–25, 91:1–25, 92:1–17]. "Often, th[e] reasons [for ordering a lifetime term of supervision] will overlap with the factors that support the defendant's custodial sentence," *United States v. Bunkley*, 732 F. App'x 388, 395 (6th Cir. 2018) (citing 18 U.S.C. § 3583(c)), and because the Court thoroughly addressed § 3553(a)'s factors when imposing Mr. Freeman's custodial sentence, it needed to give only "*some* explanation about why the factors justif[ied]" a lifetime term of supervision for Mr. Freeman, *id.* (citations omitted); *cf. Banks*, 722 F. App'x at 512 ("[W]e do not require unnecessarily duplicative discussion where the special conditions of supervised release logically flow from the reasons given for imposing a sentence of incarceration." (citing *United States v. Zobel*, 696 F.3d 558, 572 (6th Cir. 2012))). The Court did—at a bare minimum—offer at least some explanation for its decision to sentence Mr. Freeman to a lifetime term of supervision, and as the United States points out, the Court deliberately and carefully focused its explanation on Mr. Freeman's history of sexual offenses with minors:

> Mr. Freeman, I'm going to be perfectly honest with you here, I have considered imposing the statutory maximum sentence in this case. This is your third time. You've spent the vast majority of your adult life in prison for a similar offense, one that was a hands-on offense. You have serious mental health issues, you have an addiction apparently to opiates, you've been diagnosed as a pedophile, but I think my concerns, Mr. Freeman, can be dealt with by the lifetime term of supervision, and that gives me some comfort in not imposing the statutory maximum sentence. In fact, imposing the statutory maximum sentence would simply mean that you would serve a sentence and then be released without any kind of supervision, and I do not think—or without any kind of transitional treatment. There would still be a term of supervised release, but I think under the circumstances, Mr. Freeman, that a sentence sufficient but not greater than necessary here is one at the top of the guideline range for all the reasons I've stated, but primarily because you are a repeat offender. And so I'm going to impose a 151

32

month sentence at the top of the guideline range. I'm going to impose a lifetime term of supervised release, which I think is necessary under these circumstances in light of the repeat nature of your offenses.

[Sent. Hr'g Tr. at 92:18–25, 93:1–16].

With these statements, the Court was pellucid in articulating its reasons for imposing a lifetime term of supervision. *See United States v. Espericueta-Perez*, 528 F. App'x 572, 577 (6th Cir. 2013) ("Contrary to [the defendant's] assertions, the decision to impose supervised release was, in fact, 'adequately explained' by the district court during the course of the sentencing hearing. [The defendant's] criminal history . . . as particularly discussed by the district court, extends credence to the district court's conclusion that an added measure of deterrence and protection—namely, supervised release—was compelled."). Mr. Freeman's attorney therefore had no valid legal basis to object to the Court's sentence of a lifetime of supervision and was not ineffective for failing to do so. *See Mapes*, 171 F.3d at 427 (stating   that "[c]ounsel could not be unconstitutionally ineffective for failing to raise [a] meritless argument"). And in fact, in light of the Court's statement that it was inclined to impose the statutory maximum custodial sentence—240 months—if not for the availability of a lifetime term of supervision, Mr. Freeman's attorney would have arguably been ineffective if she *had* argued against a lifetime term of supervision because the Court then might have ordered more prison time, i.e., the statutory maximum. *See Thelen*, 131 F. App'x at 65–66 (stating that "attorney errors resulting in increased prison time can constitute prejudice").

For many of these same reasons, Mr. Freeman's sister argument—i.e., his argument that his sentence violates his due-process rights because the Court "did not state in open court with specify [sic] which conditions [of supervised release] and how they are worded," [Pet'r's Am. Mot. at 39]—fares no better. As is the case when a district court imposes a term of supervised

33

release, it "errs procedurally in imposing special conditions of supervised release if it fails 'to state in open court' its rationale for mandating them." *Banks*, 722 F. App'x at 512 (citing *United States v. Doyle*, 711 F.3d 729, 733 (6th Cir. 2013)). Again, however, the Court, when imposing special conditions, has no obligation to engage in an "unnecessarily duplicative discussion where the special conditions of supervised release logically flow from the reasons given for imposing a sentence of incarceration." *Banks*, 722 F. App'x at 512 (citing *United States v. Zobel*, 696 F.3d 558, 572 (6th Cir. 2012)).

In Mr. Freeman's case, the Court, during sentencing, made the following statements when ordering the special conditions under Standing Order 15-06:

> Now, this Court has adopted certain special conditions of supervision related to sex offenders. Those are established under standing order 15-06. In the presentence report the probation officer recommended a number of those conditions to be imposed in this case. There's been no objection to those. I have independently reviewed them, and they all appear to be perfectly appropriate in this case based upon the nature and circumstances of the offense committed. You shall comply, therefore, with the following special conditions under Standing Order 15-06, that is conditions 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 12 and 13.

[Sent. Hr'g Tr. at 94:24–25, 95:1–10]. In imposing these conditions, the Court specifically referenced § 3553(a)(1)—that is, the nature and circumstances of the offense—and the Court, again, engaged in a meticulous discussion of this factor and the other factors when crafting Mr. Freeman's custodial sentence. This discussion was more than adequate to apprise Mr. Freeman of the Court's reasons for imposing the special conditions because those reasons logically flow from the reasons it relied on in imposing the custodial sentence. *Compare* [Sent. Hr'g Tr. at 78:13–25, 79:1–25, 80:1–25, 81:1–25, 82:1–25, 83:1–25, 84:1–25, 85:1–25, 86:1– 25, 87:1–25, 88:1–25, 89:1–25, 90:1–25, 91:1–25, 92:1–17 (addressing § 3553(a)'s factors in detail], *with* [J. at 4 (containing the conditions of supervised release)].

34

For example, when the Court addressed the nature and circumstances of Mr. Freeman's offense as it fashioned his custodial sentence, it discussed its serious concerns with his high risk of recidivism. [Sent. Hr'g Tr. at 88:19–22, 89:7–9]. The Court was concerned because Mr. Freeman "committed this offense about two years after being released from parole for [his] prior hands-on offense," [*id.* at 88:23–24], and it was concerned because his repeat offenses involving minors demonstrated that he needed help—something more than merely outpatient therapy—to overcome his diagnosis of pedophilic disorder, [*id.* at 89:5–7]. All the special conditions addressed these concerns. For instance, the first and the eighth special conditions, which require Mr. Freeman to participate in "sex offender mental health treatment" and to submit himself to a psychological assessment, respectively, were in response to the Court's concerns about his pedophilic disorder. The others special conditions—e.g., the requirements that he not associate with minors; not frequent locations where minors normally gather; not possess materials that arouse sexual interest in minors; not possess, without approval from the probation officer, electronic devices that allow access to the internet; and submit to a search if the probation officer has a reasonable suspicion of a violation of any one of these conditions—were all in response to the Court's concerns about Mr. Freeman's high risk of recidivism. So, in sum, the Court's reasons for imposing the special conditions logically flow from the reasons it relied on in imposing the custodial sentence, and Mr. Freeman's complaint that the Court committed a procedural error by failing to voice its rationale for those conditions is therefore without merit.

Along similar lines, however, Mr. Freeman also contends that the Court failed to state "how [the conditions of supervised release] are worded" and, in failing to do so, violated his due-process rights. [Pet'r's Am. Mot. at 39]. The Sixth Circuit "has not decided whether the court must recite special conditions at the sentencing hearing," though it has recognized that "other

courts have required that special conditions be included in the oral pronouncement." *United States v. Calhoun*, 513 F. App'x 514, 518 (6th Cir. 2013) (citations omitted); *see United States v. Cruz-Nagera*, 454 F. App'x 371, 372 (5th Cir. 2011) ("[I]f the district court fails to mention a *special* condition at sentencing, its subsequent inclusion in the written judgment creates a conflict that requires amendment of the written judgment to conform with the oral pronouncement." (quotation omitted)). But as the United States correctly points out, the Court did identify each special condition "by number" when it orally pronounced Mr. Freeman's sentence. [United States' Resp. at 33]; *see* [Sent. Hr'g Tr. at 95:7–10 ("You shall comply, therefore, with the following special conditions under Standing Order 15-06, that is conditions 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 12 and 13."]. So Mr. Freeman seems to believe that the Court violated his due-process rights by not pronouncing these special conditions word for word, *see* [Pet'r's Am. Mot. at 39 (arguing that the Court failed to state "how [the conditions of supervised release] are worded"); *id.* at 40 (claiming that he had "to guess at what is expected of him")].

"A defendant has a due process right to conditions of supervised release that are sufficiently clear to inform him of what conduct will result in his being returned to prison." *United States v. Brandenburg*, 157 F. App'x 875, 878 (6th Cir. 2005) (citations omitted). In other words, when a court imposes conditions of supervised release at sentencing, they should be clear enough to "give [a] person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Mr. Freeman's contention that he did not know how the special conditions "are worded" and had "to guess at what is expected of him" is pedantic and disingenuous, not only because the Court referenced them by number but also because they appeared word for word in the PSR.

36

Indeed, during Mr. Freeman's sentencing hearing, Mr. Freeman stated that he received a copy of the PSR, reviewed it and discussed it fully with his attorney, and had sufficient time to review it with his attorney. [Sent. Hr'g Tr. at 3:6–15]. Given that he familiarized himself with these conditions by reviewing them in the PSR and the Court subsequently incorporated them by reference into his sentence, the Court was under no constitutional duty to provide him with a word-by-word review of these conditions. *Cf. United States v. Collins*, 461 F. App'x 807, 809 (10th Cir. 2012) ("Neither can we say that incorporating a prior condition of release by reference . . . instead of repeating it word for word . . . failed to provide [the defendant] with statutorily or constitutionally sufficient notice. . . . [W]e see no reason to think a person of ordinary intelligence would have failed to understand the necessity of seeking sex offender treatment when the requirement was clearly stated initially and then repeatedly incorporated by reference. Indeed, we have held incorporation by reference can provide fair warning in criminal statutes." (Gorsuch, J.) (citing *United States v. Lanier*, 520 U.S. 259, 264–267 (1997))); *see United States v. Ruhl*, No. 12–CR–0063–001–CVE, 2014 WL 858952, at *1 (N.D. Okla. Mar. 5, 2014) ("[T]he Court is not required to articulate the special conditions word for word nor does the Court have to describe every possible permutation or spell out every detail.").

Mr. Freeman's attorney therefore had no legitimate legal basis to argue that the Court violated Mr. Freeman's due-process rights by not orally pronouncing its reasons for imposing the special conditions of supervised release or by not identifying those conditions. *See Mapes*, 171 F.3d at 427 (recognizing that "[c]ounsel could not be unconstitutionally ineffective for failing to raise [a] meritless argument"). He fails, therefore, to show that his attorney rendered ineffective assistance of counsel, and he is not entitled to the extraordinary remedy of § 2255 relief.

b. *The Legality of the Conditions of Supervised Release*

Mr. Freeman goes on to claim that his attorney was ineffective for failing to argue that his standard conditions of supervised release are "unconstitutionally overbroad." [Pet'r's Am. Mot. at 45]. According to Mr. Freeman, these conditions violate his constitutional rights under the First Amendment because they consist of "a complete ban on materials that contain nudity." [*Id.*]. But as the United States rightly argues in response, neither Mr. Freeman's standard nor special conditions of supervised release consist of a complete ban on nudity.

Mr. Freeman also maintains that his special conditions of release are unconstitutional because they consist of a "complete ban . . . on computers," and he asserts that his attorney was ineffective for failing to argue as much. [Pet'r's Am. Mot. at 45]. The special condition at issue is Special Condition 12, which states: "The defendant shall not possess or use a computer or any other electronic device with access to the Internet or any other on-line computer service at any location (including employment), without the approval of the probation officer." E.D. Tenn. SO 15-06. But Mr. Freeman makes no argument from which the Court can possibly conclude that this special condition is overbroad; he alleges, in conclusory fashion, only that Special Condition 12 is "constitutionally overbroad and infringes on First Amendment rights." [*Id.*]. This allegation by itself is wholly insufficient to sustain an overbreadth challenge.

Indeed, the burden is on Mr. Freeman to show that Special Condition 12 is overbroad, *Virginia v. Hicks*, 539 U.S. 113, 122 (2003), and to make this showing, he must establish that it "prohibits a substantial amount of protected speech" both "in an absolute sense" and "relative to the [special condition's] plainly legitimate sweep," *United States v. Williams*, 553 U.S. 285, 292–93 (2008). Mr. Freeman, however, musters no such argument or showing, without which he makes no headway in demonstrating that his attorney was ineffective for failing to contend that

38

Special Condition 12 is unconstitutionally overbroad, *see Mapes*, 171 F.3d at 427 (recognizing that "[c]ounsel could not be unconstitutionally ineffective for failing to raise [a] meritless argument").[9] Mr. Freeman does not, therefore, establish that his attorney rendered ineffective assistance of counsel, and he is not entitled to the extraordinary remedy of § 2255 relief.

### c. *Apprendi, Alleyne,* and *Haymond*

Next, Mr. Freeman, in arguing that his lifetime term of supervision violates his Fifth and Sixth Amendment rights because it is "a new sentence" and "can be imposed without a jury and only by a preponderance of the evidence," [Pet'r's Am. Mot. at 42], he appears to rely on *Apprendi*'s directive that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Mr. Freeman also maintains that his lifetime term of supervision violates *Alleyne*, [Pet'r's Am. Mot. at 43], in which the Supreme Court held that *Apprendi*'s directive "applie[s] with equal force to facts increasing the mandatory minimum." *Alleyne*, 570 U.S. at 112. Mr. Freeman notes that "the Supreme Court will soon issue its opinion on these matters about June 2019. See <u>Haymond</u>," [Pet'r's Am. Mot. at 43], and it has now done so in *United States v. Haymond*, 139 S. Ct. 2369 (2019).

In *Haymond*, a jury had convicted the defendant of possessing child pornography, in violation of 18 U.S.C. § 2252(b)(2), which authorized the district court to impose a custodial sentence of up to ten years, 18 U.S.C. § 2252(b)(2), and a term of supervised relief between five years and life, 18 U.S.C. § 3583(k). *Id.* at 2373. After completing his custodial sentence, he

---

[9] Mr. Freeman also contends that the "regular work requirement," which is a requirement of his fifth standard condition of supervised release, *see* [J. at 3], "is vague," [Pet'r's Am. Mot. at 47], but beyond this conclusory assertion, he marshals no argument for the Court's consideration. Similarly, Mr. Freeman argues that his thirteenth standard condition of supervised release, which states that he "shall notify third parties of risks that may be occasioned by his/her criminal record or personal history of characteristics," [J. at 3], "is vague," [Pet'r's Am. Mot. at 47], but raises no argument beyond this cursory assertion.

violated his terms of supervision, *id.* at 2374, and § 3583(k)'s last two sentences contained the relevant provisions for sentencing:

> If a defendant required to register under the Sex Offender Registration and Notification Act commits any criminal offense under chapter 109A, 110, or 117, or section 1201 or 1591, for which imprisonment for a term longer than 1 year can be imposed, the court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment under subsection (e)(3) without regard to the exception contained therein. Such term shall be not less than 5 years.

18 U.S.C. § 3583(k). In accordance with these provisions, the district court imposed a sentence of five years. *Haymond*, 139 S. Ct. at 2375. A plurality of the Supreme Court held that the last two sentences of § 3583(k) are unconstitutional:

> By now, the lesson for our case is clear. Based on the facts reflected in the jury's verdict, Mr. Haymond faced a lawful prison term of between zero and 10 years under § 2252(b)(2). But then a judge—acting without a jury and based only on a preponderance of the evidence—found that Mr. Haymond had engaged in additional conduct in violation of the terms of his supervised release. Under § 3583(k), that judicial factfinding triggered a new punishment in the form of a prison term of at least five years and up to life. . . . [T]he facts the judge found here increased 'the legally prescribed range of allowable sentences' in violation of the Fifth and Sixth Amendments.

*Id.* at 2378 (citation omitted). While *Haymond* "does not mean a jury must find every fact in a revocation hearing that may affect the judge's exercise of discretion with the range of punishments authorized by the jury's verdict," "it does mean that a jury must find any facts that trigger a *new* mandatory minimum prison term." *Id.* at 2380 (footnote omitted).

In response to Mr. Freeman's argument under *Haymond*, the United States asserts that it is meritless because *Haymond* "addressed the legitimacy of an enhanced mandatory minimum sentence upon the revocation of supervised release based on judicial factfinding alone," and "[n]o such enhancement applied here." [United States' Resp. at 33 n.13]. "[S]o Freeman's reliance on *Haymond* is misplaced," the United States argues. [*Id.*]. The Court agrees with the United States because in *Haymond* the Supreme Court held § 3583(k) is unconstitutional "*[a]s applied here*,"

40

*Haymond*, 139 S. Ct. at 2373 (emphasis added), and the facts of *Haymond* and the facts of Mr. Freeman's case are inapposite.

The district court in *Haymond* had applied § 3583(k) during a revocation proceeding, whereas this Court, in Mr. Freeman's case, has done no such thing because Mr. Freeman is still serving his custodial sentence and is not yet on supervised release. This Court, therefore, has had no occasion to apply the last two sentences of § 3583(k)—which were the unconstitutional provisions at issue in *Haymond*. Instead, this Court applied the first sentence of § 3583(k)—a provision not at issue in *Haymond*—when it imposed Mr. Freeman's lifetime term of supervision. *See* 18 U.S.C. § 3583(k) ("Notwithstanding subsection (b), the authorized term of supervised release . . . for any offense under section . . . 2252A . . . is any term of years not less than 5, or life."). Even so, Mr. Freeman attempts to liken the facts of his case to *Haymond* by arguing that "if Petitioner violates his supervised release, he would now have a mandatory minimum sentence that did not exist in his original conviction, and his statutory maximum would shift to life." [Pet'r's Am. Mot. at 44]. But Mr. Freeman's argument is purely hypothetical, and his need to rely on a hypothetical scenario only underscores the distinctions between the posture of his case and the facts in *Haymond*. *See United States v. Gray*, No. 20-3523, 2021 WL 2026929, at *2 (6th Cir. May 19, 2021) ("*Haymond* is inapplicable to [the petitioner's] case because [the petitioner] was not sentenced pursuant to § 3583(k) based on a judge's finding that he violated the terms of his previously imposed supervised release by committing new sex offenses." (citing *Haymond*, 139 S. Ct. 2378–79)).

Mr. Freeman's attorney had no valid legal basis to invoke *Haymond* on his behalf, and she was not ineffective for failing to do so. *See Mapes*, 171 F.3d at 427 (stating that "[c]ounsel could not be unconstitutionally ineffective for failing to raise [a] meritless argument"). Mr.

41

Freeman does not, therefore, establish that his attorney rendered ineffective assistance of counsel, and he is not entitled to the extraordinary remedy of § 2255 relief.

### d. Religious Freedom Restoration Act

Next, Mr. Freeman argues that the Court's standard conditions of supervised release violate his rights under the RFRA. Specifically, he argues that the first standard condition, which bars him from "leav[ing] the judicial district or other specified geographic area without the permission of the Court or probation officer," [J. at 3], violates the RFRA. [Pet'r's Am. Mot. at 45–46]. According to Mr. Freeman, who professes that he is a Muslim, this condition violates the RFRA because it prevents him from "mak[ing] Hajj, which is outside this country." [*Id.* at 47].

Under the RFRA, "[a] person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000b-1(c). The RFRA provides that the government "shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability" unless the government demonstrates that this burden "(1) is in furtherance of a compelling governmental interest; and (2) is in the least restrictive means of furthering that compelling governmental interest." *Id.* § 2000b-1(a)–(b). "A RFRA claim proceeds in two steps." *Ave Maria Found. v. Sebelius*, 991 F. Supp. 2d 957, 962 (E.D. Mich. 2014). "First, [Mr. Freeman] must make out a *prima facie* case by . . . showing that the law in question 'would (1) substantially burden (2) a sincere (3) religious exercise.'" *Autocam Corp. v. Sebelius*, 730 F.3d 618, 625 (6th Cir. 2013) (quoting *Gonzalez v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 428 (2006)), *abrogated on other grounds by Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682. Second, if Mr. Freeman makes this *prima facie*

showing, then the government must show "that the application of the burden to [Mr. Freeman] (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that . . . interest." (*Id.* (quoting *O Center*, 546 U.S. at 428)).

In considering whether Mr. Freeman has made this *prima facie* showing, the Court, as an initial matter, questions to what extent it can consider a claim under the RFRA in a collateral proceeding like this one. For one thing, the appropriate remedy under § 2255 is vacatur of a defendant's sentence or conviction, *see United States v. Bartoli*, No. 21-4045, 2023 WL 5206446, at *3 (6th Cir. Aug. 14, 2023) ("The end result of a successful § 2255 proceeding must be vacatur of the unlawful sentence and one of the following remedies: a discharge, a new trial resentencing, or correction of the sentence." (citing 28 U.S.C. § 2255(a)), whereas the proper remedy under the RFRA is "damages . . . against federal officers" for constitutional violations, *Doster v. Kendall*, 54 F.4th 398, 414 (6th Cir. 2022) (citation omitted). And in similar vein, and as the Court has already stated, "[a] prisoner seeking relief under § 2255 'must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Pough*, 442 F.3d at 964 (quotation omitted). Mr. Freeman's allegations under the RFRA fit none of these three molds, and the Court therefore cannot conclude that the RFRA, if his attorney had raised it, could have provided him with any relief in the underlying criminal proceedings. *See Mapes*, 171 F.3d at 427 (stating that "[c]ounsel could not be unconstitutionally ineffective for failing to raise [a] meritless argument").

But in any case, Mr. Freeman does not make the necessary *prima facie* showing under the RFRA. Again, to make out a *prima facie* case, Mr. Freeman must demonstrate "that the law in question 'would (1) substantially burden (2) a sincere (3) religious exercise.'" *Autocam Corp.*,

43

730 F.3d 618, 625 (6th Cir. 2013) (quoting *O Centro*, 546 U.S. at 428). Under the first element, the Sixth Circuit has articulated a substantial-burden test, which "asks whether the Government is effectively forcing plaintiffs to *choose* between engaging in conduct that violates sincerely held religious beliefs and facing a serious consequence." *New Doe Child #1 v. Congress of U.S.*, 891 F.3d 578, 589 (6th Cir. 2018) (emphasis added) (citing *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 718–20)); *E.E.O.C. v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 587 (6th Cir. 2018) ("[A] government action that 'puts [a religious practitioner] to th[e] *choice*' of 'engag[ing] in conduct that seriously violates [his] religious beliefs' [or] . . . fac[ing] serious' consequences constitutes a substantial burden for the purposes of RFRA." (alterations in original) (emphasis added) (citing *Holts v. Hobbs*, 574 U.S. 352, 361 (2015))). While "religious exercise may be substantially burdened through 'the denial of or placing of conditions upon a benefit or privilege," *New Doe Child #1*, 891 F.3d at 589 (quoting *Sherbert v. Verner*, 374 U.S. 398, 4040 (1963)), "'[n]ot just any imposition on religious exercise' creates a substantial burden; 'a burden must have some degree of severity to be considered 'substantial,'" meaning that it "must be more than a 'mere inconvenience,'" *id.* at 590 (first alteration added) (quotation omitted).

Mr. Freeman attempts to infuse his RFRA claim with a degree of severity by asserting that the first standard condition—which, again, bars him from "leav[ing] the judicial district or other specified geographic area without the permission of the Court or probation officer," [J. at 3]—"holds [him] hostage in America," [Pet'r's Am. Mot. at 47], but this assertion is pure hyperbole because the first standard condition does not foreclose Mr. Freeman from traveling abroad. Rather, it gives him leave to petition the Court or his probation officer to travel abroad, and Mr. Freeman concedes that he "has no objection in notifying this Court or the Probation Officer." [*Id.*]. In light of this concession, the substantial burden that he complains of resonates

44

as little "than a 'mere inconvenience.'" *New Doe Child #1*, 891 F.3d at 590 (quotation omitted). Although Mr. Freeman claims that "he cannot be required to ask permission," [*id.*], he offers no argument as to why the requirement to ask permission substantially burdens his sincerely held religious beliefs. *See* [United States' Resp at 34 ("Freeman articulates no reason why he would be unable to seek advance permission from the Court to travel to Saudi Arabia for an event that occurs at a particular time each year; he merely asserts that he 'cannot be required' to do so.")].

In addition, Mr. Freeman also cavils about the possibility that the Court could deny his request to travel abroad if he were to seek permission, contending that he "cannot . . . be subject to being denied." [Pet'r's Am. Mot. at 47]. But again, he is still serving his custodial sentence and is not yet on supervised release, so the Court has had no occasion to deny any request to travel abroad under the first standard condition. Mr. Freeman is therefore without standing to raise a claim under the RFRA to the extent he argues that he "cannot . . . be subject to being denied." *See Autocam*, 730 F.3d at 625 ("RFRA claims" require "the plaintiff [to] make out a prima facie case by establishing Article III standing[.]"); *see NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 449 (6th Cir. 2007) ("Standing, in a conventional Article III sense, requires just proof of actual injury[.]"); *see also Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007) (stating that standing "goes to . . . subject matter jurisdiction" and can therefore "be raised *sua sponte*").

Mr. Freeman's attorney therefore had no legitimate legal basis to argue that the Court's standard conditions of supervised release violate his rights under the RFRA. *See Mapes*, 171 F.3d at 427 (recognizing that "[c]ounsel could not be unconstitutionally ineffective for failing to raise [a] meritless argument"). He fails, therefore, to show that his attorney rendered ineffective assistance of counsel, and he is not entitled to the extraordinary remedy of § 2255 relief.

5. Failure to File an Appeal

Next, Mr. Freeman alleges that his attorney was ineffective because she did not file an appeal. [Pet'r's Am. Mot. at 3]. When an attorney fails to follow a client's directive to file an appeal, her performance, as a matter of course, is deficient under an objective standard of reasonableness, and it creates a presumption that the client has suffered prejudice. *See Deitz v. Money*, 391 F.3d 804, 810 (6th Cir. 2004) ("[T]he failure of [the petitioner's] attorneys to file a timely appeal on his behalf, despite his purported request that they do so, would fall below an objective standard of reasonableness." (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000))), *abrogated on other grounds by Stone v. Moore*, 644 F.3d 342 (6th Cir. 2011); *see also Garza v. Idaho*, 139 S. Ct. 738, 747 (2019) (stating that "prejudice is presumed 'when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken'" (quoting *Flores-Ortega*, 528 U.S. at 484)). In sum, "so long as [Mr. Freeman] can show that 'counsel's constitutionally deficient performance deprive[d] him of an appeal that he otherwise would have taken,'" this Court "[is to 'presum[e] prejudice with no further showing from [Mr. Freeman] of the merits of his underlying claim[].'" *Garza*, 139 S. Ct. at 747 (quoting *Flores- Ortega*, 528 U.S. at 484)).

Mr. Freeman's claim, however, does not resonate as one in which his attorney failed to heed an instruction to file an appeal on his behalf. Instead, Mr. Freeman faults his attorney for failing to "file a notice of appeal" and to "inform [him of] any grounds to appeal." [Pet'r's Am. Mot. at 3] And along similar lines, he alleges that his attorney was ineffective because she "advised him that he had no grounds to appeal, and did not preserve his appellate rights." [*Id.*]. But these allegations suggest that Mr. Freeman understood that his attorney was not going to file an appeal. He does not allege that, despite his attorney's failure to inform him of grounds for an appeal and

46

her advice against an appeal, that he nonetheless instructed her to file one and that she did not act on his instruction—an allegation that is essential because an attorney does not have an unqualified duty to file an appeal for a client.

An attorney has a constitutional duty to consult with a client about the prospect of an appeal "only when there is reason to think either (1) that a rational defendant would want to appeal, or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000); *cf. United States v. Dubrule*, 822 F.3d 866, 881 (6th Cir. 2016) (recognizing that deficient performance requires "sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt the defendant's competency" (quotation omitted)). Mr. Freeman does not allege facts supporting either of these two scenarios, and even if he had alleged these facts, he leaves the Court to question what prejudice he suffered, if any, in light of his acknowledgement that he, acting pro se, "did file a direct appeal," which the Sixth Circuit adjudicated. [Pet'r's Am. Mot. at 9]; *see* [United States' Resp. at 35 (arguing that "Freeman sustained no prejudice because he filed a timely notice of appeal on his own behalf, and the Sixth Circuit thereafter appointed new counsel to represent him for purposes of that appeal" (internal citation and citation omitted))].

In sum, Mr. Freeman fails to show that his attorney was ineffective for failing to file an appeal despite his instruction that she do so. He is therefore not entitled to the extraordinary remedy of § 2255 relief.

### C. Prosecutorial Misconduct

Lastly, Mr. Freeman claims that the United States engaged in prosecutorial misconduct in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), a seminal case in which the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused . . . violates due

47

process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. *Id.* at 87. In short, "*Brady* proscribes withholding evidence 'favorable to an accused' and material to [his] guilt or to punishment.'" *Skinner v. Switze*r, 562 U.S. 521, 536 (2011) (alterations in original) (quoting *Cone v. Bell*, 556 U.S. 449, 451 (2009)). For Mr. Freeman to establish that the United States committed a *Brady* violation that undermines his conviction, he must show that (1) the evidence at issue is favorable to him, because it is exculpatory or impeachment evidence,[10] (2) the United States suppressed the evidence, whether willfully or inadvertently, and (3) the evidence is material. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999); *Moore v. Illinois*, 408 U.S. 786, 795 (1972). The third element, materiality, means that "prejudice must have ensued," *Strickler*, 527 U.S. at 282, and prejudice ensues "when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different," *Cone*, 556 U.S. 469–70. A reasonable probability means that "the likelihood of a different result is great enough to 'undermine[] confidence in the outcome of the [criminal proceedings].'" *Smith v. Cain*, 565 U.S. 73, 75–76 (2012) (alterations in original) (quotation omitted).

Mr. Freeman's allegations of prosecutorial misconduct largely consist of recitations of *Brady*'s legal standard, with little substance, if any. *See* [Pet'r's Mot. at 19–20; Pet'r's Am. Mot. at 47–48]. He alleges only that the United States violated *Brady* because it did not ensure that certain evidence, i.e., a Facebook message and various witness' statements, were accurate and truthful. [Pet'r's Mot. at 19–20; Pet'r's Am. Mot. at 48]. In response, the United States maintains that Mr. Freeman's *Brady* claim is "cursor[y]" and "substantively meritless." [United States'

---

[10] "Impeachment evidence is also encompassed within the *Brady* rule because a jury's reliance on the credibility of a witness can be decisive in determining the guilt or innocence of the accused." *Ross v. Pineda*, 549 F. App'x 444, 456 (6th Cir. 2013) (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985)).

Resp. at 15 n.7, 16 n.7]. The Court agrees because a factfinder, not the United States, serves as the bulwark for ensuring the accuracy and truthfulness of questionable evidence. *See United States v. Duncan*, 391 U.S. 145, 156 (1968) ("The framers of the constitution strove to create an independent judiciary but insisted upon further protection against arbitrary action. Providing an accused with the right to be tried by a jury of his peers gave him an inestimable safeguard against the corrupt or overzealous prosecutor[.]"); *United States v. Scheffer*, 523 U.S. 303, 336 (1998) ("It is the function of the jury to make credibility determinations." (Stevens, J., dissenting)).[11] The Court fails to grasp, and Mr. Freeman fails to explain, how the accuracy and truthfulness of evidence is even peripherally relevant to an analysis under *Brady*, which requires the Court to consider the unlawful *suppression* of evidence, not its accuracy or truthfulness. *Skinner*, 562 U.S. at 536 (quotation omitted).

Mr. Freeman, however, goes on to argue that the United States' "whole investigation amounts to scarlett [sic] letter witch hunt with the sole purpose of convicting [him] at any cost." [Pet'r's Second Discovery Mot., Doc. 18, at 11–12]. Through a request he made under the FOIA, he has allegedly now obtained evidence that "was not disclosed to [him]" and "supports prosecutorial misconduct and/or ineffective assistance of counsel." [Pet'r's Third Discovery Mot., Doc. 20, at 3]. He states that this evidence consists of various investigative interviews that the United States conducted as well as witness statements that it solicited. [Pet'r's Second Discovery Mot. at 9–11; Pet'r's Third Discovery Mot. at 3–5].

Although Mr. Freeman has filed several documents that he procured from his FOIA requests, he fails to identify specific statements from these documents—which are heavily

---

[11] A defense attorney also serves as a bulwark for ensuring the accuracy and truthfulness of evidence against her client because she "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Kimmelman v. Morrison*, 477 U.S. 365, 385 (1986) (quotation omitted).

redacted—that constitute, in his view, exculpatory evidence or impeachment evidence. As a pro

se litigant, he is entitled to a liberal construction of his pleadings, *Franklin v. Rose*, 765 F.2d 82,

85 (6th Cir. 1985), but he is not entitled to have the Court engage in guesswork or to construct his

pleadings by surveying his documents and handpicking statements that support his claim, when

he has failed to identify such statements in his pleadings and motions or to explain *how* they

qualify as exculpatory or impeachment evidence,[12] *see Erwin v. Edwards*, 22 F. App'x 579, 580

(6th Cir. 2001) ("Although liberal construction requires active interpretation of the filings of a

pro se litigant, it has limits. Liberal construction does not require a court to conjure allegations

on a litigant's behalf[.]" (internal citation and citations omitted)); *United States v. Dunkel*, 927

F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

Mr. Freeman's failure, however, is not absolute because he does direct the Court to *one*

specific statement that he believes amounts to exculpatory or impeachment evidence. Citing an

unnamed witness's statement from an interview with the Federal Bureau of Investigation, he

recites this statement as follows: "[Mr. Freeman] was never alone with children. He always had

supervision when children were around." [Pet'r's Third Discovery Mot. at 4 (quoting Ex. D, Doc.

20-1, at 9)]. This statement could conceivably serve as exculpatory or impeachment evidence if

Mr. Freeman had been convicted of an offense for which he had been physically present with a

minor—like a violation of 18 U.S.C. § 2251(a). *See* 18 U.S.C. § 2251(a) (proscribing the coercion

of a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction

of that conduct); *United States v. Champion*, 248 F.3d 502, 506 (6th Cir. 2001) (stating that a

violation under § 2251(a) "presents serious potential risk of physical injury" to a minor).

---

[12] Exculpatory evidence is evidence that "tend[s] to negate directly the guilt of the defendant," *United States v. Crayton*, 357 F.3d 560, 568 (6th Cir. 2004), and impeachment evidence is "evidence undermining witness credibility," *Kelley v. Burton*, 792 F. App'x 396, 397 n.1 (6th Cir. 2020) (citation omitted).

50

But the Court struggles to comprehend how this unnamed witness's statement could be offered as exculpatory or impeachment evidence for the offense for which Mr. Freeman was actually convicted—a violation of 18 U.S.C. § 2252A(a)(5)(B)—because this offense does not involve a defendant's physical interaction with a minor but the possession of pornographic images. *See* 18 U.S.C. § 2252A(a)(5)(B) (prohibiting the possession of a "book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography"). Indeed, by Mr. Freeman's own admission, he violated § 2252A(a)(5)(B) by electronic means, i.e., outside the presence of a minor. [Plea Agreement at 2–3 (agreeing that he had received images of child pornography by text message from his co-defendant, Ms. Lozano)]. In short, the unnamed witness's statement that Mr. Freeman was never alone with children serves as neither exculpatory nor impeachment evidence that negates or undermines his conviction under § 2252A(a)(5)(B), and in fact, the Court is unable to fathom, and Mr. Freeman fails to explain, how it has any value as material evidence to this conviction. This statement, therefore, cannot form a *Brady* violation, even if the United States failed to disclose  it. *See Fautenberry v. Mitchell*, 515 F.3d 614, 637 (6th Cir. 2008) ("[I]n the context of the *Brady* claim . . . there is no reasonable likelihood that the disclosure of the undisclosed evidence would have altered [the petitioner's] decision to enter his plea because the evidence was not material to his defense.").

To the extent Mr. Freeman, though, is arguing this unnamed witness's statement serves as exculpatory or impeachment evidence that negates or undermines § 2252A(b)(2)'s enhanced penalty, that argument is more persuasive because his physical sexual assault of his niece triggered this penalty. *See Jefferson v. United States*, 730 F.3d 537, 554 n.4 (6th Cir. 2013) ("*Brady*'s obligations 'appl[y] to evidence material to sentencing.'" (alterations in original) (quotation omitted))); *see also Brady*, 373 U.S. at 87 (stating that the *Bradly* doctrine provides

that "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or *to punishment* (emphasis added)). But Mr. Freeman fails to convince the Court that prejudice ensued from the United States' alleged non-disclosure of this witness's statement. *See Strickler*, 527 U.S. at 282 (stating that "prejudice must have ensued" from an alleged *Brady* violation).

Again, Mr. Freeman asserts only that he "was prejudiced, by receiving a sentencing enhancement that would not otherwise apply, and giving him a sentence beyond the statutory maximum of 120 months." [Pet'r's Am. Mot. at 11; *see id.* (claiming that the underlying proceedings were unfair because he was "sentenced in excess of his statutory maximum sentence")]. As the Court has already stated, however, it did not sentence him to the statutory maximum or to a sentence beyond the statutory maximum, which was 240 months and not 120 months. 18 U.S.C. § 2252A(b)(2). Rather, it sentenced him to a guidelines-range sentence of 151 months, which is a sentence that fell well below the statutory maximum sentence of 240 months. And even if it had not applied § 2252A(b)(2)'s enhancement, his guidelines range still would have exceeded the 120-month threshold that he complains of because the low-end range of that range was 121 months. He therefore fails to demonstrate that "there is a reasonable probability that, had the evidence been disclosed, [his punishment] would have been different," *Cone*, 556 U.S. 469–70, and in the absence of this prejudice, i.e., increased punishment, the unnamed witness's statement cannot form a *Brady* violation, even if the United States failed to disclose it.[13]

---

[13] Although Mr. Freeman claims that his attorney violated his right to effective assistance of counsel by not investigating this statement, [Pet'r's Third Discovery Mot. at 7–8], the absence of prejudice is fatal to his pursuit of discovery as to this claim.

Lastly, Mr. Freeman asserts that the United States engaged in prosecutorial misconduct, in violation of *Brady*, because it agreed with the FBI to destroy evidence in this case. [Pet'r's Third Discovery Mot. at 4–6 (citing Ex. E, Doc. 20, at 11–12)]. As an initial matter, the Court notes that the United States' "erasure" of evidence in a closed criminal case is "by no means uncommon," *United States v. Laurent*, 607 F.3d 895, 900 (1st Cir. 2010) (citations omitted), and although Mr. Freeman makes much of the fact that the United States agreed to allow the FBI to "dispose of any remaining evidence" before the Sixth Circuit had resolved his appeal, [Ex. E at 12], the destruction of evidence before the resolution of an appeal does not, without more, rise to the level of a *Brady* violation, *see Illinois v. Fisher*, 540 U.S. 544, 548–49 (2004) (determining that no due-process violation occurred when the state had destroyed evidence prior to trial because the defendant did not show that the state acted in bad faith).

Normally, the United States' suppression of exculpatory or impeachment evidence will violate a defendant's due-process rights regardless of the United States' intent, i.e., whether it acted in good faith or in bad faith. *See Srickler*, 527 U.S. at 281–82 (recognizing that a *Brady* violation takes place when the United States withholds exculpatory or impeachment evidence willfully or inadvertently). But when a defendant or a petitioner argues, as Mr. Freeman does, that the United States destroyed "evidence whose exculpatory value is indeterminate" and, therefore, "only 'potentially useful,'" courts "apply a different test," *United States v. Jobson*, 102 F.3d 214, 218 (6th Cir. 1996), under which Mr. Freeman must establish that the United States (1) "acted in bad faith in failing to preserve the evidence,"[14] (2) "the exculpatory value of the evidence was apparent before its destruction," and (3) "the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other reasonably available

---

[14] "To establish bad faith . . . a defendant must prove 'official animus' or a 'conscious effort to suppress exculpatory evidence." *Jobson*, 102 F.3d at 218 (quoting *California v. Trombetta*, 467 U.S. 479, 488 (1984)).

means," *Isaac v. Green*, No. 21-5861, 2022 WL 4182208, at *3 (6th Cir. Apr. 24, 2022) (quoting *Jobson*, 102 F.3d at 218)).

Mr. Freeman does not cite this test or muster any allegations or arguments that satisfy these elements. He does not allege that the United States acted in bad faith when it agreed with the FBI to destroy the evidence. He does not allege with any specificity what the destroyed evidence was or how it held exculpatory value, claiming—in conclusory fashion—only that it was "the very evidence that would prove [his] innocence." [Pet'r's Third Discovery Mot. at 6]. In addition, he does not allege that he would be unable to obtain comparable evidence by other reasonable means. His allegations regarding the United States' alleged destruction of evidence are therefore wholly inadequate to demonstrate his entitlement to relief under *Brady*.

In sum, Mr. Freeman fails to show that the United States engaged in prosecutorial misconduct in violation of *Brady*, and he is therefore not entitled to the extraordinary remedy of § 2255 relief.

## IV. CONCLUSION

As the petitioner under § 2255, Mr. Freeman fails to meet his burden of establishing that his conviction and sentence were in violation of the Constitution, or that a fundamental defect resulted in a complete miscarriage of justice or an egregious error. Mr. Freeman's motion to vacate, set aside, or correct his sentence [Doc. 1] and his amended motion to vacate, set aside, or correct his sentence [Doc. 7] are therefore **DENIED**. This case is hereby **DISMISSED with prejudice**. The Court will enter an order consistent with this opinion.

ENTER:

s/J. RONNIE GREER<br>
UNITED STATES DISTRICT JUDGE
